Good morning. May it please the Court, my name is Eric Miller and I represent the appellant Qwest. The District Court erred in excluding material evidence from the trial and in failing to correct the jury's demonstrated misunderstanding of the causation standard for a Title VII retaliation claim. Both of those errors were prejudicial and require a new trial. Beginning with the evidentiary questions, really the key piece of evidence that the Court excluded and our number that we've raised, but the one I want to start with is the notes of the investigatory interviews that Qwest supervisors conducted with Mr. Clemens, and in particular the notes of the July 18th interview. Because the reason for Mr. Clemens' termination, as set out in the termination letter, referred to that interview. It said, during the interview, you took no responsibility for any of your actions, but instead tried to shift blame to others. And so the key disputed question at trial was, was that correct? Were the Qwest supervisors right about Clemens' behavior in that interview, or was Clemens' account correct? And Clemens' counsel said, in closing argument, we will never really know exactly what happened at that interview, because there was conflicting testimony on it. The witnesses were testifying six years after the interview took place. But in fact, we did have a way of knowing what happened at that interview, and that was the notes that the trial court excluded. And there wasn't... Were those notes shown to witnesses? They were, and one of the points that Mr. Clemens has made is that they could be used to refresh the recollections of the witnesses. And were in fact used that way. And they were, but there is a limit to the extent to which, even with the help of notes, someone's recollection of events six years before can plausibly be refreshed. But counsel, I have to tell you, when I was a prosecutor, I would have loved to have introduced the notes of interviews with FBI agents to prove what someone said, but I was stuck calling the agent, and the agent had to rely on his best recollection unless they recorded it. There was no recording in this case, correct? That's correct. I mean, I don't know of any authority that says notes of this type are a business record, an ordinary, something in the ordinary course of business, when there's an eye towards potentially firing this guy. What is your best case to say that the district court abused its discretion by not admitting those notes as actual substantive evidence, as opposed to, as Judge Clifton referred to, refreshing someone's recollection? The district court abused its discretion because it made an error of law, which is to say that the court's decision to exclude the notes was predicated not on a conclusion that they didn't meet the basic requirements of A through D of A036, but rather on a conclusion that they were unreliable because Ms. Flores, the person who prepared them, had in the court's view a motive. But what is the basis for them to be admissible anyway? The basis for them to be admissible is that they meet the requirements of the rule. They're prepared at the time by somebody with knowledge of the events in the ordinary course of business. What distinguishes them from the FBI records that Your Honor referred to is that those are prepared for the purpose of criminal proceedings. Not necessarily. Someone calls up and says, hey, someone stole my mail. They call the postal inspector and the postal inspector just takes notes and you never know if there's going to be, you don't even know if there's a suspect. They don't even know if the mail has really been stolen. Here, it's pretty clear this was not going well between Quest and Mr. Clemens at this point. And that's the reason why there's this interview. So can you point me to a case, a Ninth Circuit case that is similar to this, that says it would be abuse of discretion to not admit these notes? I don't have a case with respect to notes of this type. The case that I would refer you to is Baxter, which makes clear that the district court's conclusion that the motive of the decision maker is a basis for exclusion is not correct. And I think that does go to 8036 analysis. The motive does matter. There are lots of I mean, really got it wrong in this situation. Well, I mean, so I mean, I think what I take your point to be that these are prepared in anticipation of litigation. I mean, that would, if that were true, that would be a basis for excluding. I'm just, put that aside. That's another problem you have. But just show me the case that says notes of this type are admissible as substantive evidence. What is that case? If you're looking for a case specifically relating to personnel records, I don't think we have cited one. I mean, how about any case that says notes of an interview in an HR, I mean, these HR interviews happen all the time, all the time. And tell me a case that says these type of notes in any circuit are admissible as substantive evidence. I don't know of one saying they are. I'm also not aware of one that says that they're not. And we are relying on the general principle that this is a regular activity of the business. It's not just used for litigating with employees. It's used for the company's internal decision making. Right, about trying to fire somebody. Well, or whether to discipline them. And there are cases that say that employee personnel records are business records. But counsel, that's time and attendance, that's how much money they made in a certain time, that's when do they badge into the office and when do they badge out. That's very different than this. I mean, you have other issues in the case. I don't want to get too bogged down on this, but you don't have a case like this one that you can tell us this is the case why you win. I do not have a case like this with respect to things like that. But counsel, also, counsel, I mean, how are you harmed anyway? Because didn't the witnesses actually testify to what went on in those investigations and what led up to Mr. Butler deciding to terminate Clemens? They did testify to it, to a degree. Mr. Butler, who was the decision maker there, said he didn't remember all of the details of what had happened. And their testimony was much less compelling, necessarily, than would have been presenting the actual document, which the jury could have looked at, and it could have seen, for example, 11 separate times Mr. Clemens refused to answer questions, or 19 times he said that he didn't remember events that had taken place just a couple of weeks before. So that's, those are arguments we could have made by reference to the actual exhibit, which the jury would have been able to look at, that we simply couldn't elicit with testimony, even refreshed. The use of these notes, was it principally the responses of Mr. Clemens you were interested in, as opposed to the comments by Mr. Butler or other people with the company? It was, there was a dispute as to both, but principally we were interested in the way Mr. Clemens spoke in the interview. Were these ever offered as admissions of a party opponent, so that they wouldn't be hearsay in the first place? We did not rely on that theory below. We did point out that another non-hearsay basis for admission was that they were evidence of Mr. Butler's state of mind. Mr. Butler said that he reviewed the notes in making his decision, so that's a separate non-hearsay basis that they would have been admissible. I'd like to turn briefly to the question of the arbitrator's decision. As the Court is of this type, it is generally within the discretion of the District Court. If the only question at issue were the arbitrator's decision standing alone, I'm not sure we would have sought to introduce it, and if we had, we would have a much more difficult argument here. But in this case, we had two prior decisions, one from the Washington State Human Rights Commission, one from the arbitrator. They reached opposite conclusions on key factual points, and it was an abuse of discretion for the District Court to admit the one, but not admit the other that reached a contrary decision, and that directly addressed Mr. Clemens' arguments about disparate treatment and retaliation. Can I ask you about the stipulation? I was a little confused because the word stipulation was used. I got the sense, though, that you guys were kind of forced into a corner on Can you just take a brief moment and kind of walk me through how that stipulation was created? So the District Court directed the parties to prepare a stipulation, and as Your Honor notes, we did not reach agreement on that. That is perhaps the clearest point in the record to refer you to is pages 308 to 310 of the excerpts of record where counsel for said, you can read what I've given you, and proceeded to read something that we did not agree to. So we did preserve the objection to that. During deliberations, the jury sent a note to the court asking, with respect to retaliation, does it have to be the only factor or a motivating factor? And that question was simply wrong. The premise of the question is wrong. It doesn't have to be either of those. Under NASSAR, the standard is but-for causation. It doesn't have to be the only factor, but merely being a motivating factor is not correct. The District Court, of course, has a considerable degree of discretion in whether and how it responds to questions from the jury. But what the court said here is, the answer to your question, that statement from the court was erroneous because the jury should not have been told that their question had an answer in the instruction because their question didn't have an answer. The question was, is it only a factor or a motivating factor? And that's not the correct question. It's a question based on a misunderstanding of the law. So the court should have said, and we urged it to say, you're asking the wrong question. It is neither of those things. But the court didn't do that. And by saying the answer to your question is, and then rereading the instruction it had given, which caused the confusion in the first place, it implicitly endorsed the jury's incorrect framing of the question. And in that respect, it's similar to the District's decision in Warren, where you got a question from the jury that revealed a misunderstanding of the law. And the judge's response implicitly before that did nothing to clear that up. And so that is outside of the range of discretion that the District Court has in responding to questions from the jury. And since that was, you know, that was the issue on which the jury found against Quest, their confusion as to what the standard of causation was, was prejudicial and led to the verdict on that point. Do you want to reserve your time? Yes, Your Honor. Thank you. May it please the court, my name is Alexander Higgins. I'm here to represent Arthur Clemens, Jr., who is in the courtroom, as well as my co-counsel, Rebecca Arie and Dan Johnson. Art Clemens worked for Quest for approximately 20 years until he was fired shortly after engaging in protected activity, opposing discrimination in the workplace. The jury determined that he was the victim of retaliation, awarded him lost wages, emotional distress, and punitive damages. Those are important because this is not a close case as propositioned by Quest and its appeal. The jury found that the conduct of Quest was malicious, oppressive, or in reckless disregard of the plaintiff's rights. The arbitrator had previously found Mr. Clemens to have violated his obligations and yet concluded that termination was an appropriate remedy. So it may be a closer case than you're letting on because at least one other decision maker came to a different kind of conclusion. Well, the arbitrator didn't have five days' worth of evidence of discrimination and retaliation that we put on. He heard from none of the co-workers who testified about how Mr. Clemens' alleged violations were commonplace at Quest and they were nothing out of the ordinary. And that Mr. Clemens was being specifically targeted for his protected activity. The union president submitted a declaration saying we didn't even put on a case of discrimination or retaliation because we wanted to conserve resources and we just wanted to target the just cause standard. So the arbitrator's decision, that gets into the issue of whether the arbitrator's decision was properly excluded under ER 403 and that the district court has broad discretion to do. And he looked at this and said this is invading the province of the jury. This is a totally different question than what's before the jury in this case, which is was there retaliation? And so... Then why was the Human Rights Commission report submitted? Well, first of all, there's no assignment of error to that on appeal. But more importantly, it's admitted because of the long history in the Ninth Circuit of allowing probable cause determinations made by expert agencies going back to 1981 in the Plummer case. Doesn't the juxtaposition of the two seem at all peculiar to you? Not really. When you look at the judge's instructions, the judge gives an instruction to the jury that says, look, there was an arbitration. It was a 38 page written opinion. I'm not going to give you the whole opinion. There's an arbitration. The arbitrator found in favor of quest on these performance issues that you hear about at this trial, found that these happen. The Human Rights Commission determination you can take a look at, but it's only a preliminary finding. The Human Rights Commission does not make any credibility findings. It doesn't say this person is telling the truth. This person is not telling the truth. It's not an adjudication. It's not an adjudication, whereas the arbitrator is making an adjudication about credibility. And the judge is saying, whoa, wait a minute. That's for the jury to decide who's more credible, who's telling the truth and who isn't. And we had so many more witnesses who were able to testify at the trial than were able to be called by the union at the arbitration that the jury had the right to make a decision free from the prejudice, the unfair prejudice, as the district court found, of having this confusing 38 page written opinion from the arbitrator,  I do want to talk about the other issue that counsel started. But I still haven't heard your answer to my question, which doesn't the juxtaposition of the two seems a little peculiar. I mean, you have in one hand a an actual adjudication by a neutral. On the other hand, what amounts to a probable cause determination by a prosecuting agency. And yet one of them comes in and the other one doesn't. And the one that comes in is the one that's the the non adjudication. Why does that come in? But the non adjudication is merely a preliminary finding as the judge instructed the jury. But it more importantly, it's a preliminary finding on the issues at issue in the trial, discrimination and retaliation. The arbitrator did not decide those issues. The arbitrator decided under a totally different legal standard under just cause. And so it was only going to be confusing to the jury about the arbitrator saying, oh, well, I found that the plaintiff was not telling the truth about this performance issue or that performance issue. All right. I'd like to address what opposing counsel has called the key piece of evidence. The July 18 notes that the judge was well within his discretion in excluding a trial. Every management witness was able to testify fully about what transpired in the notes, including any admissions by Mr. Clements that were made at that time. There was no substantive fact excluded by the district court. He only managed the form in which the evidence would come in and it would come in through oral testimony. The question from the bench about do you have a Ninth Circuit case saying that this kind of thing is a business record? And the answer was no. We have a Ninth Circuit case that says that this kind of thing is not a business record. And it's not exactly an H.R. interview, but it's close. It's a special investigatory audit. And that's the Paddock case. P-A-D-D-A-C-K. It is in our materials. I don't have a page number. We can track it down. Thank you. Further, the court was well within its discretion, including that in concluding that the type notes did not have sufficient indicia of trustworthiness. They were not made at the time of the interview. In fact, Quest intentionally destroyed the handwritten notes that were taken contemporaneously. And they used the word destroyed, their own witness, E.R. 556. Further, the court was very troubled by the fact that they were selectively edited, one-sided, and passed around from manager to manager without even a recognition of nobody could even claim authorship of the notes. And that's on E.R. 552. Next, having not succeeded in convincing the district court that these were trustworthy, Quest tried a backdoor approach of saying, well, this must go to the state of mind of Mr. Butler, who was at the meeting. But Mr. Butler's decision was made because of what happened during the meeting. In fact, mostly his mind was made up even before the meeting occurred. Four weeks before the meeting, he suspended Mr. Clemens without pay indefinitely. During the meeting, he went on for many, many pages of testimony at trial about how poorly Mr. Clemens acted during the meeting. And that was his decision. He described it as a train wreck. There was no need to review the meeting that he was present for to confirm his negative impression of Mr. Clemens. He was there. He never explained to the district court why he needed to review notes from a meeting he attended. The only thing he could say, the entire sum of his statement about his alleged reliance, is that it was pertinent, in answer to a leading question from counsel, E.R. 319. They cite to E.R. 285, in addition, that's just wrong. That's about notes that Mr. Butler reviewed that were taken on July 9, 2008, of another witness. In any event, Quest's weak evidence that Butler somehow needed to rely on notes of a meeting he attended was not persuasive to the district court, and they were excluded. Any error was harmless in this case because Mr. Butler was allowed to extensively use the notes to refresh his recollection. All management witness testified, and this was a case where punitive damages were assessed against Quest. One other thing I want to point out is counsel begins with a quote from closing argument that I said, we will never really know what exactly happened, and the sentence goes on, in that meeting because the original notes taken by Rebecca Flores were destroyed. But more importantly, on the harmless error issue, just above that, I said, who was rude to whom? This train wreck of a meeting. They had an unpleasant discussion. Well, maybe they were both right. Maybe they were both right from their perspectives. So the case really wasn't decided by the jury based on was Mr. Clemens rude or not. We conceded that Mr. Clemens was probably not very happy at that time and may have been rude in that meeting. So this was further evidence that this is a harmless error if any error was committed, although we don't think there was any error. The next question is whether the district court correctly answered the jury's question about sole reason or motivating factor, and it did by redirecting the jury, refocusing them on the answer, which was that if the termination would not have occurred but for the protected activity, then you find for the plaintiff. Now, that's a double negative and is a little bit hard for a jury to get its head around, but that's what the Ninth Circuit pattern instruction is, and that's what the district court thought it needed to reiterate to the jury. And if the jury still didn't understand it, they could have asked another question, but they didn't. There is no evidence that the jury disregarded that answer. The law presumes that the jury actually followed the instructions and the answer by the district court. And if this court reverses on this basis, then every time a district court has a question from a jury about the meaning of a pattern instruction, the district court is going to have to provide some further unknown elaboration, which will lead to another appeal and an appellate decision about whether that was a correct elaboration or not. Further, any error was not prejudicial. Under the law of the Ninth Circuit, there's only prejudicial error when looking at the instructions as a whole. The substance of the law was not fairly and correctly covered. Counsel, one of the things that concerns me on the instruction was, I noticed that question one of the verdict form talks about plaintiff's race as a motivating factor, and I think that the jury could have been confused by the fact that the first question explicitly uses a motivating factor, but the retaliation question doesn't. Do you think that could have, I mean, I wonder if that was the source of their confusion, and if the response by the court actually cleared that up. I think the response by the court did answer that question, because it basically said, you're looking at the wrong instruction. And it reread the correct instruction to the jury, that you have to find that the termination would not have occurred but for the protected activity, which is, in essence, a little different than the motivating factor standard. So, yes, I think the jury was possibly on the wrong track. It also would have been on the wrong track had it been deciding sole factor, which is higher than but for. And so the judge answered it, excuse me, by redirecting to the correct answer under the law. All right. The next question is about, I want to go back because I got out of order a little bit. I want to address the arbitrator's decision one more time, and that is, there is quest cannot cite to a single appellate court that has held that it was an abuse of discretion and that a district court should have admitted an arbitrator's decision in a discrimination case. I just wanted to make sure I said that. Counsel, can we talk about your cross appeal for a moment? Yes. So as I understand your argument that it's supposed to be equitable remedy, it's supposed to be to make someone whole, and if you give him all the back pay at one lump sum, he could be in a higher tax bracket, and therefore it's really not the same as being made whole. Now, I take it that rule would work conceivably both ways. So, for example, if Congress were to pass a law that cuts everyone's taxes to 5% or whatever the current proposal is to do, I take it then if someone was even better off because they happen to get the money in a year where the tax rate is low, then they could, under your view of the law, the district court could say that you're getting too much, and you've got to refund some money back to the employer. Yes. I believe that's true. In this case, it's undisputed, though, even by quest's own expert, that Mr. Clemens was not made whole. Their expert submitted a declaration that he was shortchanged $40,000 by having to pay all of the money in one tax year as opposed to being spread out over three tax years. Our expert decided $60,000, and the court declined, the district court declined to exercise its discretion. It said the Ninth Circuit hasn't explicitly authorized me to do so, so therefore I'm not going to do it, and so the standard review on that should be de novo because he made a legal determination about the availability of the remedy. Now, even if he had exercised discretion, we think it's an abuse of discretion not to award what at least the defendant's own expert says was the amount of harm. U.S. Supreme Court has stated that Title VII is designed to make a plaintiff whole and that courts must provide equitable relief to make a plaintiff whole. Because there was no dispute about him being not made whole, then the court had to act. Quest's argument that it is a legal remedy, not an equitable one, is waived because it was not argued below. They didn't ask for the jury to decide the issue, which is what they would have had to have done to preserve the legal argument. They, in fact, said it was equitable. They said this is not equitable in this case and agreed that it was an equitable remedy. At SCR 334 and 337, that argument now has been completely changed 180 degrees. Now they're saying, oh, no, it's not equitable at all. Since we lost, now we're going to say it's legal. And we believe that that is wrong, and there's not a single appellate court in the country that has held that it is legal, not equitable. Every court is unanimous. There is a split on the availability, but three courts of appeal have held that it is available. The third, seventh, and tenth have all held that it is an available, equitable remedy, and we urge the Ninth Circuit to do the same. Thank you. Thank you, counsel. Three points on the principal appeal, and then I'll turn to the cross appeal. With respect to the arbitrator's decision, the arbitrator was applying a just cause for termination standard under which any disparate treatment, whether based on race or retaliation or something altogether different, would have been a basis for setting aside the termination. And so when the arbitrator found that no such disparate treatment had been established, which he said explicitly at page 925, there was no proof that the company treated anyone similarly situated in a less severe manner, that established, if for sure, that there was not racial discrimination or retaliation. I take it you did not seek to apply any claim preclusion or issue preclusion based on the arbitration award. No, we did not, Your Honor. Our argument was simply whatever probative value either it or the State Human Rights Commission has, if the one is going to come in, the other ought to come in as well. With respect to the notes, notes of disciplinary and personnel decisions are routinely used in employment litigation. And what really distinguishes these from some of the hypotheticals that the court was raising is that these are used by both sides to the proceedings. Mr. Wiley, the union representative who was at the meeting, said that he uses the notes as a representative of the union and that he understands them to be reliable and they can be trusted to be an accurate reflection of what happened at the meeting for both the union's purposes and the company's purposes. With respect to Mr. Butler's state of mind, the evidence referring specifically to this set of notes is at page 281 and 282 of the ER. Finally, on the instructional point, we're not saying that the court needed to rephrase the pattern instruction. It was perfectly fine to stick with the pattern instruction. The problem was saying that the pattern instruction provided an answer to the jury's question. It was that statement by the court that was erroneous. The jury should have been told that the question, as stated, had no answer. On the cross-appeal, as has been discussed, there's a circuit split on the question of the availability of a gross-up for tax purposes. It's our position that the court need not and should not weigh in on that circuit split. The district court said that it was declining to exercise its discretion. So that is a statement that clearly recognized that... Right, but the first part of that sentence is, given the lack of authorization from the Ninth Circuit to authorize it, I mean, it seems to me the whole exercise of discretion is premised on a certain legal question that if he knew the answer to, maybe he would have exercised his discretion differently. That was one of the factors that he identified, but I think referring to declining to exercise his discretion would not really have made much sense for the court to say, unless it thought that it had at least some measure of discretion. Well, I think that's their argument, that he did. The court did have the discretion, just didn't know it. Well, but I think the court declines to exercise its discretion would be a peculiar way for a court to say, I don't think I can do this. I don't want to argue, except he does say, given the lack of authorization. I acknowledge it's... I can't do it, so I'm going to use my discretion not to do it. There is some ambiguity in the statement, I acknowledge, but we would suggest that it was not an abuse of discretion. I was just noticing that the D.C. Circuit's rationale for not awarding the gross-up was that there was no basis in law anywhere to award one, but that decision was in 1994, and the circuits on the other side of the split are like 2015, 2005, so I'm wondering if even the D.C. Circuit would have come out the same way, had it been aware of how the other circuits were going. So the D.C. Circuit has... I mean, you're correct as to the initial statement, there's a decision, though, from 2007, Fogg against Gonzalez, which we cite, in which the D.C. Circuit has adhered to its position. But even the circuits on the other side don't say that there is a presumption that there should be such an award, just the district court can choose to grant one or not. Right, right. May grant it. Thank you. Thank you both for your argument in this case. This matter is submitted, and we'll move on to the final case for today's calendar, Northwest School of Safety v. Ferguson.
judges: Wardlaw, Clifton, Owens